IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------------------x
APOTEX, INC. and APOTEX CORP.,      :
                                     :
                Plaintiffs,          :
                                     :
        v.                           :    CASE NO. 12-60704-CIV-
                                     :    SEITZ/SIMONTON
MYLAN PHARMACEUTICALS INC.,          :
                                     :
                Defendant.           :
------------------------------------x
APOTEX, INC. and APOTEX CORP.,      :
                                     :
                Plaintiffs,          :
                                     :
        v.                           :    CASE NO. 12-60705-CIV-
                                     :    SEITZ/SIMONTON
PFIZER INC., and GREENSTONE LLC,     :
                                     :
                Defendants.          :
------------------------------------x
APOTEX, INC. and APOTEX CORP.,      :
                                     :
                Plaintiffs,          :
                                     :
        v.                           :    CASE NO. 12-60708-CIV-
                                     :    SEITZ/SIMONTON
LUPIN PHARMACEUTICALS, INC. and LUPIN LTD., :
                                     :
                Defendants.          :
------------------------------------x

**DECLARATION OF BRENDA L. DODD IN SUPPORT OF
DEFENDANT, MYLAN PHARMACEUTICALS INC.'S RESPONSE
<u>IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY</u>**

I, Brenda L. Dodd, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the factual statements contained herein are made of my personal knowledge and are true and correct.

1. I am over the age of 18 and am otherwise *sui juris*.

2. I am the head e-discovery paralegal at Mylan Pharmaceuticals Inc. ("Mylan"). I have held this position since 2011. As part of my duties, I am responsible for litigation support services, including searching and processing of e-mail and other electronically stored information.

## I. BACKGROUND

3. I understand that the Mylan Quinapril Combination Product—the product covered by ANDA No. 077-093 —is the subject of this litigation.

4. I examined the logistics and expense relating to production of discovery for three Mylan products: (1) the aforementioned Mylan Quinapril Combination Product, which is covered by ANDA No. 077-093 (the "Mylan Quinapril Combination Product"); (2) the Mylan Quinapril Only Product, covered by ANDA No. 076-694 (the "Mylan Quinapril Only Product") and (2) a quinapril only product which Mylan obtained from Genpharm ULC ("Genpharm Quinapril Only Product").

5. The electronic records relating to the quinapril products—the Mylan Quinapril Only Product, the Genpharm Quinapril Only Product, and the Mylan Quinapril Combination Product—constitute e-mails as well as other electronically stored documents including electronic files.

## II. E-MAIL SEARCH: MYLAN QUINAPRIL COMBINATION PRODUCT

6. I conducted an electronic search of Mylan's e-mails, using the terms "quinapril" and "magnesium" in combination with the terms "hydrochlorothiazide" or "HCTZ" in an effort

to limit the scope of the searched e-mails to those relating to the Mylan Quinapril Combination Product.

7. This search yielded over 100,000 e-mails. The actual number of documents, however, far exceeds this number as this count does not include the attachments to the e-mails, which, based on my experience with the Mylan data and the proportionate number of attachments to e-mails, can include an additional 50,000 to 100,000 documents.

8. In my experience with the Mylan data, I estimate that this e-mail collection would contain at least 100 – 150 gigabytes ("GB") of data.

9. Based on my experience with the Mylan data and the ratio of number of attachments to e-mails, I estimate that a total of 150,000 – 200,000 documents (including e-mails and attachments) are contained in this potential e-mail collection. I will refer to this search as the "Quinapril Combo ESI Search".

### III. E-MAIL SEARCH: QUINAPRIL ONLY PRODUCTS

10. I conducted another electronic search of Mylan e-mails in conjunction with this litigation. In this instance, I used the search term "quinapril", such that the search results would include e-mails relating to the Mylan Quinapril Only Product, the Genpharm Quinapril Only Product and the Mylan Quinapril Combination Product.

11. This search yielded over one million additional e-mails, or ten times the amount of the e-mails that were found in the Quinapril Combo ESI search.

12. As discussed above, however, and based on my experience, the actual number of documents far exceeds one million as this count does not include the attachments to the e-mails.

13. In view of the large number of results, it would be impractical to manually break down these e-mails to a manageable number, export them and obtain the actual electronic size of

this collection. But I would estimate that this e-mail collection alone would contain at least 800 GB - to 1 terabyte ("TB") of data.

14. As such, and based on my experience, I estimate that a total of an additional 1.5 million to 2 million documents are contained in this potential e-mail collection. For ease of reference, I will refer to this search as the "Quinapril Only ESI Search".

IV. COST ANALYSIS: COLLECTION, PROCESSING AND REVIEWING

A. COLLECTION

15. In my experience, the mere collection of the e-mail documents discussed above would be costly and burdensome to the Mylan business.

16. Collection of these e-mails would be within my purview. Based on my experience and knowledge regarding the time requirements for collection of such documents, the collection and export of the documents identified in the Quinapril Only ESI Search would take approximately 20 business days, as opposed to approximately 5 business days for the Quinapril Combo ESI Search.

B. PROCESSING

17. Once the e-mail documents are collected, they have to be processed and reviewed.

18. In order to process the Quinapril Combo ESI Search and the Quinapril Only ESI Search, our typical vendor would charge about $500.00 per GB. This cost includes removing duplicated documents and placing the electronically stored information into a database for review. Once the ESI is loaded into the database, our typical vendor would charge an additional $50.00 per GB per month for storage and hosting.

19. I estimate that the cost for processing the Quinapril Combo ESI Search will be approximately $50,000 to $75,000.

20. I estimate that the cost for processing the Quinapril Only ESI Search would be an additional $400,000 to $512,000.

21. Thus, the cost of processing documents for the Quinapril Only ESI Search would be 7-8 times the cost of processing documents for the Quinapril Combo ESI Search. The foregoing cost increase also does not take into account the additional expense Mylan will incur in having its attorneys review and prepare these documents for production.

22. I declare under the penalty of perjury that the statements set forth herein are true and correct to the best of my knowledge and are based on my personal knowledge or experience.

Dated: February 18, 2013

*Brenda L. Dodd* (signed)
Brenda L. Dodd